## Case No. 4,961.

### In re FOSTER.

[2 N. B. R. 232 (Quarto, 81); [1] 1 Am. Law T. Rep. Bankr. 127; 1 Chi. Leg. News, 103.]

District Court, S. D. New York. Nov. 11, 1868.

Cooley, Hatch & Beneville, for bankrupt. Samuel G. Jelliffe, for creditors.

BLATCHFORD, District Judge. On the evidence in this case, as it now stands, I think the sixth and eighth specifications filed by the creditor, William P. Dixon, in opposition to the discharge of the bankrupt, are substantially proved in part. The sixth specification states, among other things, that the bankrupt gave a fraudulent preference, contrary to the provisions of the bankrupt act, by assigning to William P. Dixon a third of his claim against the National Ice Company of the city of New York. The eighth specification states, among other things, that the bankrupt, in contemplation of becoming bankrupt, made a conveyance of part of his property for the purpose of preferring a creditor and preventing the property from coming into the hands of the assignee and being distributed under the bankrupt act, by assigning to William P. Dixon, for such purpose, one-third of his claim against the National Ice Company, such assignment having been made after the bankrupt was insolvent, and after he had made up his mind to take the benefit of the bankrupt act.

There is no oral testimony in the case but that of the bankrupt himself. On the 30th

[1] [Reprinted from 2 N. B. R. 232 (Quarto, 81), by permission.]

day of July, 1868, he testified that whenever he borrowed money he generally gave security; that there were several notes protested against him in 1866; that during the winter of 1866 and the spring of 1867 he found himself unable to meet his current engagements; that during the year 1867 he gave a number of notes for borrowed money, trusting to something to turn up in order to pay them; that he did not recollect having paid any borrowed money, during the year 1867, and that he made up his mind that he should be obliged to take the benefit of the bankrupt act in the summer of 1867. On the 18th of August, 1868, he testified that between November, 1866, and July, 1867, he received at least three thousand dollars from William P. Dixon, which was not repaid or expended for Dixon, and which now constituted his indebtedness to Dixon. On the 25th of August, 1868, he testified that it was during and after the summer of 1867 that he found himself unable to meet his current engagements; that he was sure he paid no borrowed money after the 1st of August, 1867; that although some days usually elapsed between his borrowing money and pledging the securities mentioned in Schedule A No. 2, to his petition, the securities were always agreed upon at the time the money was borrowed, but were not always given then, and not until a few days afterwards; that he desired to withdraw the statement so made on his former examination, that between November, 1866, and July, 1867, he received at least three thousand dollars from William P. Dixon. which was not repaid or expended for Dixon, and which now constituted his indebtedness to Dixon, and to state in substitution that between November, 1866, and February, 1867, he and Mr. Dixon had many money transactions together, amounting in the aggregate to fifty thousand dollars or more; that sometimes Dixon would borrow money from him and pay him by checks, that sometimes he would borrow money of Dixon on his checks without security, and sometimes on notes of other persons, and for other persons endorsed by him, and that these notes were sometimes secured by stock collaterals.

The proof of debt filed in this matter by Dixon, and which was sworn to and filed on the 28th of July, 1868, two days before the first examination of the bankrupt, and is part of the testimony in the case, shows an indebtedness of the bankrupt to Dixon, amounting to four thousand two hundred and ninety-five dollars and thirty-three cents, and states that the indebtedness arose out of loans of money made by Dixon to the bankrupt, evidenced by a note and due bill made by the bankrupt, and out of the discount by Dixon of six notes made by other parties and endorsed by the bankrupt, and that to secure that indebtedness the bankrupt executed to Dixon the assignment hereafter mentioned. Copies of the note and bill made

by the bankrupt and of the other six notes above referred to are annexed to the proof of debt. The note made by the bankrupt is dated March 4th, 1867. The due bill is dated April 27, 1867. It must be assumed on the evidence, that the loans on the note and the due bill respectively were not made after their respective dates. The six notes discounted matured between April 30, 1867, and July 22, 1867. At how late a period any of them were discounted does not distinctly appear. A copy of the assignment before referred to, executed to Dixon by the bankrupt, is set forth in the proof of debt. It is dated August 24th, 1867, and by it the bankrupt, in consideration of one dollar to him paid by Dixon, for the purpose of securing to Dixon one thousand dollars, assigned to Dixon all his claim against the National Ice Company of New York, except one thousand two hundred and fifty dollars assigned to Louis S. Robbins, of New York, August 24th, 1867, growing out of the various notes of said company, for pay as its secretary and treasurer, said claim amounting, by estimation, to the sum of three thousand dollars. The proof of debt states the estimated value of the security so assigned to Dixon as being two hundred dollars.

On all the testimony the assignment of August 24th, 1867, to Dixon, must be regarded as a transfer to secure a pre-existing indebtedness, and not as a pledge of security made at the time the indebtedness was contracted, and as a part of the transaction. All transactions of borrowing money from Dixon, or obtaining discounts from him, seem to have been at an end by July 1, 1867. The assignment of the claim to Dixon was a fraudulent preference contrary to the act, made when he was insolvent and was contemplating bankruptcy, within the causes for withholding a discharge specified in the twenty-ninth section, and within the sixth and eighth specifications. The testimony of the bankrupt is very confused and unsatisfactory. It may be that the points on which the discharge is now refused may be explained. If so, I am disposed to allow an opportunity for making the explanation, if such a favor shall be asked, the creditor to be at liberty also to introduce such testimony as he desires. I do not pass upon any other points raised by the specifications, but refuse the discharge at present on the grounds above stated.